(97 South. 835)

**ALABAMA MACHINERY & SUPPLY CO. et al. v. SAMSON COTTON OIL, GIN & FERTILIZER CO. et al. (4 Div. 44.)**

(Supreme Court of Alabama. Oct. 11, 1923. Rehearing Denied Nov. 16, 1923.)

1. Fraudulent conveyances ⬅269(2)—Variance as to grantees of alleged fraudulent conveyance held not fatal.

In creditor's action to set aside alleged fraudulent conveyance by debtor, variance between allegations that the conveyance was made to a named corporation and proof that the conveyance was in fact made to certain persons who thereafter, together with others, formed such corporation, *held* not fatal.

2. Fraudulent conveyances ⬅300(4) — Evidence held to prove consideration for alleged fraudulent conveyances.

In creditor's action to set aside alleged fraudulent conveyance by debtor, evidence *held* to prove that the property was conveyed in good faith to satisfy debtor's indebtedness to grantees secured by mortgages on the land equal in amount to the value of the property.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Bill of Alabama Machinery & Supply Company and others against the Samson Cotton Oil, Gin & Fertilizer Company and others. From a decree for respondents, complainants appeal. Affirmed.

Ball & Beckwith, of Montgomery, and Farmer, Merrill & Farmer, of Dothan, for appellants.

It was necessary for the Douglass Company to show that the debt claimed to be due it by the Samson Company was honest, and that the fair value of the property was not more than the consideration of the deed to it. Smith v. McAdams, 207 Ala. 118, 92 South. 411; Hodges v. Coleman, 76 Ala. 103; Robinson v. Moseley, 93 Ala. 70, 9 South. 372. It is no answer to say the transaction was made in good faith; the facts must be averred, showing good faith. Freeman v. Stewart, 119 Ala. 158, 24 South. 31; Gamble v. Aultman, 125 Ala. 373, 28 South. 30; Cartwright v. Bamberger Co., 90 Ala. 405, 8 South. 264.

Mulkey & Mulkey, of Geneva, for appellees.

Where there is bona fide existence of a pre-existing debt as consideration for a deed, and the property is no more than a fair equivalent for it, intention to hinder, delay, or defraud creditors is immaterial and cannot defeat the conveyance. London v. G. L. Anderson Brass Works, 197 Ala. 16, 72 South. 359; Douglass Cot. Oil Co. v. Ala. Mach. & Sup. Co., 205 Ala. 51, 87 South. 342; Waddle v. Great So. Phosphate Co., 184 Ala. 346, 63 South. 462.

GARDNER, J. Appellants as simple contract creditors of the Samson Cotton Oil, Gin & Fertilizer Company (hereinafter referred to as the Samson Company) have filed this bill against said company and the Douglass Cotton Oil Company (hereinafter designated the Douglass Company) to set aside as fraudulent and void a certain conveyance of substantially all the property of the Samson Company.

[1] The bill charges that the conveyance was made by the Samson Company to the Douglass Company, but the answer discloses —supported by the proof—that the conveyance was in fact made to A. S. Douglass, C. W. Mizell, and H. M. Sessions, who thereafter, together with some others, formed a corporation known as the Douglass Cotton Oil Company for the purpose of operating the plant. This variance, however, as to pleading and proof we pass without further notice, and rest the decision upon the merits of the case.

The bill attacks the conveyance upon the ground the consideration therefor was simulated and fictitious, and, if the consideration was valuable, as being wholly inadequate, the property being worth $35,000 in excess of the consideration paid. For further details as to the averments of the bill reference may be had to the report of the case on former appeal (Douglass Cotton Oil Co. v. Ala. Mach. & Supply Co., 205 Ala. 51, 87 South. 342), where the bill was held sufficient as against the demurrer interposed thereto.

Upon this appeal we have only the simple question of fact presented, and a detailed discussion thereof will serve no useful purpose. A very brief outline will suffice. The answer shows, fully supported by the proof, that the origin of this transaction relates back to July, 1916, when the Samson Company, engaged in business at Samson, Ala., made application through its president, W. H. Holloway, to Douglass and Mizell, a partnership composed of A. S. Douglass and C. W. Mizell, doing business at Opp, Ala., for a loan of $15,000, which was made, and a mortgage executed upon the property of the Samson Company as security therefor pursuant to the authority of the stockholders duly given.

We find nothing in the record to cast a shadow upon the good faith of this transac-

tion. The amount of this loan was to be repaid by installments, only one of which was paid, and in May, 1918, the Samson Company, through its president, made application to Douglass and Mizell for another loan, which was made to the amount of $26,000, and a mortgage executed by the Samson Company on its personal property as security therefor. This was intended as a temporary loan. The greater portion of the proceeds thereof were used in the payment of certain acceptances of the Samson Company indorsed by Holloway and one Donaldson and Stanley, which acceptances were held by the First National Bank of Opp; of which C. W. Mizell was cashier and A. S. Douglass was president. As to Douglass, it appears he took no part in these transactions, the entire matter being handled by Mizell. The acceptances at the Bank of Opp were for certain seed sold to the Samson Company by Donaldson and Stanley.

The testimony of Mizell was to the effect that at that time he had no knowledge or information that the Samson Company was in an unstable condition, and that the president had stated to him the company would be able to liquidate the loan out of the material they then had on hand for sale, and that the loan was in entire good faith. The president testified he was of the opinion the company would be in good financial condition under the "year's run," but physical disability had prevented his giving full attention to the business; that the unstable financial condition was principally due to the purchase of seed at a price much higher than that subsequently fixed by the government authorities. For many years the Bank of Opp had done business with the Samson Company, and discounted its acceptances. The testimony of Mizell further shows that the Samson Company had been in operation for 10 or 12 years, and that he had previously had business relations with it handling its acceptances of notes, and that they had all been paid. The bank had also transacted much business with Donaldson and Stanley, who indorsed the acceptances and received credit therefor, and the transaction under consideration—with Donaldson and Stanley—was just as had been previously done on other occasions. Mizell further states that the first information he had that the Samson Company was in bad financial condition, was about June 15, 1918, something like a week after the directors' meeting on June 10, 1918.

The directors of the Samson Company made and adopted a resolution to sell the property for not less than $39,000. Effort was made by the president to procure a purchaser, but without success. A meeting of the stockholders was called for June 22, 1918. The amount due Douglass and Mizell, and secured by mortgages, was something over $39,000, and in order to avoid a foreclosure the stockholders agreed to sell the property to Douglass and Mizell and to H. M. Sessions, who was one of the stockholders of the concern, and a deed was accordingly executed in due form, conveying the property embraced by the mortgages. The sale was in payment and satisfaction of the mortgage debt. Douglass and Mizell and Sessions thereafter made an effort to procure a purchaser, and offered the property for $35,000, but were unsuccessful. Thereafter these purchasers, together with several other individuals, formed the corporation known as the Douglass Cotton Oil Company for the operation of this plant and made improvements thereon at an expenditure of something over $18,000. The plant was operated only a few months when it was destroyed by fire.

[2] The complainants offered no proof except to establish the amount of their indebtedness, and that offered by the respondent is without contradiction. If it is to be believed there was no fraud in the transaction either in law or in fact, the consideration was not simulated or fictitious, but was valuable, and, according to the proof, adequate. The evidence fully sustains the conclusion that the property was worth nothing in excess of the amount of the consideration of the deed to Douglass and Mizell and Sessions. A conclusion of fraud in the transaction here complained of is not justified by the proof.

We have not overlooked the insistence of counsel for appellant that the answer is insufficient, citing Smith v. McAdams & Co., 207 Ala. 118, 92 South. 411, among other authorities; but an examination of the answer is persuasive the point is without merit. Together with the exhibits thereto, the answer is embraced within pages 14 to 29, inclusive, of the record, and, as we read and understand it, sufficiently details the entire transaction.

We therefore conclude that the court below correctly decreed in dismissing the bill, and the decree will here be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.